```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
```

| | |
|---|---|
| Terry H. Capone,<br><br>       Plaintiff,<br>  v.<br><br>City of Columbia, Companion Third Party Administrators, The South Carolina Workers' Compensation Commission, Henry Gene McCaskill, Doris McCubbins, Dr. Michael Green, Richland County Ombudsman's Office,<br><br>       Defendants. | C/A. No. 3:19-cv-2490-CMC-PJG<br><br>**Opinion and Order<br>adopting Report and Recommendation** |

Through this action, Plaintiff Terry H. Capone ("Capone") seeks recovery from his former employer, the City of Columbia ("the City"), and six other defendants (collectively "WC Defendants") that allegedly played some role in processing or adjudicating Capone's claims for benefits under the South Carolina Workers' Compensation Act ("WC Claims"). The WC Defendants include Companion Third Party Administrators ("Companion"), the South Carolina Workers' Compensation Commission ("the Commission"), Henry Gene McCaskill, a Commissioner of that entity, Doris McCubbins, an employee of Companion, Dr. Michael Green, a physician with whom Capone consulted regarding his WC Claim or underlying injury, and the Richland County Ombudsman's Office, an entity with which Capone communicated regarding his WC Claims or employment-related matters.

Capone's pro se Complaint and incorporated Charge of Discrimination focus on events relating to denial of three WC Claims.[1] While Capone also includes a few allegations relating to other benefits he sought from the City, his demand for relief refers only to denial of workers' compensation benefits and related emotional distress damages. ECF No. 1 at 6. Without differentiating between Defendants, Capone pursues relief under three federal statutes and one state-law theory including: (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* ("ADA"); (3) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); and (4) a state-law claim characterized as "Obstruction of Justice, Hand of one hand of all, Employer W/C Insurance Fraud." ECF No. 1 at 4.

**BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On January 9, 2020, after initial review of the Complaint, the Magistrate Judge issued a Report recommending claims against the WC Defendants be summarily dismissed without prejudice and issuance of service of process. ECF No. 21. The Magistrate Judge authorized issuance of a summons to the City.

---

[1] The substance of Capone's claims is contained in a Charge of Discrimination he filed against the City and attached to his Complaint. *See* ECF No. 1 at 5, 6 (referring to attached Charge of Discrimination under query seeking "facts of [your] case"); ECF No. 1-1 (Charge of Discrimination and Dismissal and Notice of Rights); *infra* "Summary of Complaint."

The Magistrate Judge advised Capone of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so. Capone filed objections on January 27, 2020. ECF No. 30. The matter is now ripe for resolution.

After conducting a *de novo* review as to specific objections made, and considering the record, the applicable law, and the Report of the Magistrate Judge, the court adopts the recommendations in the Report and summarily dismisses the claims against the WC Defendants without prejudice. The court also dismisses the RICO and state-law claims to the extent asserted against the City without prejudice.

**STANDARDS**

**Review of Report.** The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**SUMMARY OF COMPLAINT**

Capone's Complaint utilizes a form for pro se employment discrimination claims. ECF No. 1. On this form, Capone checked boxes indicating he is seeking relief under Title VII and the

ADA. He also checked the "Other federal law" box, writing in "CIVIL RICO 18 U.S.C. 1962(c), CONSPIRACY TO COMMIT RICO 18 U.S.C. 1962(d)." Finally, he checked a box titled "Relevant state law," writing in Obstruction of Justice, Hand of one hand of all, Employer W/C Insurance Fraud" ("State-Law Claim"). ECF No. 1 at 4. Responding to a query relating to the "discriminatory conduct" at issue, Capone checked boxes indicating he was complaining of "Failure to accommodate my disability"; "Unequal terms and conditions of my employment"; and "Retaliation." Capone also checked a box for "Other acts" and wrote in "WORKERS COMPENSATION INSURANCE FRAUD." *Id.* at 5.

Detail as to the factual basis of Capone's claim is provided through an attached Charge of Discrimination, which Capone signed on May 28, 2019, and filed with the United States Equal Employment Commission ("EEOC"). ECF No. 1 at 5, 6 (responding to query seeking "facts of [your] case" by referencing "attached pages 1-15"); ECF No. 1-1 (Charge of Discrimination and "Dismissal and Notice of Rights" issued by the EEOC on June 4, 2019). The attached Charge of Discrimination primarily addresses the history of three WC Claims Capone filed in 2013, including related communications and appeals. *Id.* at 3-11. At multiple points, Capone characterizes the actions of the City, the Commission, and others involved in events relating to his WC Claims as constituting fraud, including wire fraud in violation of RICO, or as unconstitutional or discriminatory action based on race. *E.g.*, *id.* at 12 (alleging denial of equal protection, disparate treatment, and disparate impact based on race). In support of his claim of racial discrimination, Capone provides brief summaries of the following: (1) two workers' compensation cases brought by Caucasians against employers other than the City (*id.* at 13-14); (2) an ethics complaint against a different WC Commissioner brought on behalf of an African American woman (*id.* at 14); and

4

(3) a workers' compensation case pursued on behalf of an African American firefighter against the City (*id.* at 14, 15).

> Capone concludes his Charge of Discrimination as follows:
>
> Defendants used the Postal Service and the wires for interstate communications in effectuation of their scheme, demonstrat[ing] and involving a threat of continuing racketeering activity against employees of UPS [sic] who are entitled to South Carolina workers compensation benefits[.]   In addition [to] RICO violations I believe I have been discriminated against through Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Americans with Disabilities Act of 1990, as amended.
>
> WHEREFORE Terry H[.] Capone demands judgment against defendants for violations of Title VII [and the ADA and seeks] damages measured by the amount of benefits improperly withheld from him, an amount of $869,530.00 plus interest as provided by law, all tripled in accordance with RICO, together with attorney fees and cost[s] no less than as provided by law.

*Id.* at 15.[2]

While Capone's Charge of Discrimination focuses on the three WC Claims and seeks relief measured by "benefits improperly withheld," it also refers briefly to other employment or retirement-related events including: (1) communications in December 2013 and January 2014 regarding clearance required for Capone to return to work and an offer for him to return on restricted duty (*id.* at 4); (2) a February 2014 communication regarding disability retirement benefits (*id.* at 5); (3) an April 2014 email relating to a change in the pay system (*id.*); (4) an April 2014 "South Carolina Retirement System Final Payroll Certification (*id.*); and (5) this court's

---

[2]  Despite the plural reference to "defendants," the Charge of Discrimination is pursued only against Capone's former employer, the City.

January 2015 order granting the City summary judgment in an earlier employment action brought by Capone (*id.* at 6).[3]

**OBJECTIONS**

Capone objects to the recommendation his RICO claim be dismissed, arguing he "sufficiently investigated the facts and circumstances . . . and found there was a basis for the suit" before filing his verified Complaint. ECF No. 30 at 2. Capone refers to ten exhibits that he argues support his claim and are subject to judicial notice.[4] He also quotes or paraphrases various general legal propositions such as that a pro se litigant's pleadings are to be liberally construed and "[i]t is a fundamental doctrine of law that a party to be affected by a personal judgment must have his day in court[.]" *Id.* at 3-5. Capone also cites several state-law provisions that give special legal protections or exemptions to firefighters. *Id.*

Specifically in support of his RICO claim, Capone argues he has a property interest in worker's compensation benefits. *Id.* at 5-7. He argues this property interest combined with the

---

[3] Capone's prior action challenged a delayed promotion and was filed in late 2012. *See Capone v. City of Columbia*, C.A. No. 3:12-cv-3369-CMC ("*Capone I*"), ECF No. 1. In January 2015, the court granted the City's motion for summary judgment in that action. *Capone I*, ECF No. 54. In May and June 2019, Capone filed two motions seeking to vacate the judgment in *Capone 1*. *Id.*, ECF Nos. 55, 59. Both motions were denied on September 3, 2019. *Id.*, ECF No. 61. That decision is on appeal. *Id.* ECF No. 63. While the court found no grounds to vacate the prior judgment, it noted some of the documents on which Capone relied (including the Charge of Discrimination on which he relies for the present action) addressed or related to matters that occurred after and were not addressed in the prior litigation. *Id.* at 11 ("The remainder of Plaintiff's exhibits appear to relate to his claims for workers compensation and disability/retirement benefits. These claims were not addressed in this action."); *id.* at 11 n. 10 ("Many of the referenced events did not even occur until after judgment was entered in this action.").

[4] The "exhibits," more accurately described as cited documents as they are not attached, are discussed below. *See infra* Judicial Notice.

6

alleged actions of Defendants "creates, under the circumstances, a RICO violation." *Id*. He refers to RICO's definition of racketeering activity as including acts indictable under federal law prohibiting wire and mail fraud. *Id.* at 7. Capone refers to the origins and purpose of the workers' compensation laws, asserting employees are "automatically entitled" to benefits under certain circumstances. He asserts the Report rests on an error of law and his RICO claim "fit[s] squarely into [the] substance" of RICO. *Id.* at 8.

**Judicial Notice.** Capone argues the court must take mandatory judicial notice of certain matters or documents, presumably including a list of "excerpts" from his Workers' Compensation files and related communications. *Id.* at 8, 9. He specifically alleges fraud as to one communication in which the Commission directed "the defendants" to change a date of injury entry from June 24, 2013, to June 24, 2014. *Id.* at 11. Apparently referring to a prior communication relating to this directive, Capone states "[e]very decision and order your agency created after 2015 [that uses the] fraudulent date of injury Jun[e] 24, 2014, was fraud upon the court, and every time you mailed or emailed it constitutes a predicate act of mail fraud and wire fraud under the RICO act." *Id.*

Capone concludes as follows:

> Plaintiff has met all legal burdens, provided facts and evidence necessary to establish each of his non frivolous claims. The Plaintiff has plead mail and wire fraud with particularity and has stated RICO claims in which relief may be granted, is non frivolous and summary dismissal should be DENIED. Additionally, [i]n regards to the RICO Claim the [WC Defendants] [summary dismissal] should be DENIED and the court should grant the motion for extension of time to correct errors in Plaintiff['s reply that [is] now due, and flexible scheduling and court appointed attorney and service of process should be issued for each of the Defendants as they relate to the[] RICO Claim and this case should proceed to a jury trial.

*Id.* at 12.

# DISCUSSION

I. **Dismissal of WC Defendants as to Title VII and ADA**

Plaintiff does not address the recommendation his Title VII and ADA claims be dismissed to the extent asserted against Defendants other than the City. As the Report explains, such claims are properly asserted only against an employer and the only Defendant alleged to have acted as employer is the City. The court, therefore, dismisses the Title VII and ADA claims to the extent asserted against any Defendant other than the City.

II. **Dismissal of RICO Claim**

Capone's argument against dismissal of his RICO claim presumes his allegations raise an inference one or more Defendants engaged in mail or wire fraud by sending communications that included a false statement of fact relating to his WC Claims. Most specifically, Capone relies on the alleged misstatement of the date of one injury or claim. He maintains the date was changed at the direction of the Commission.

Capone's RICO claim fails even assuming the Complaint could support an inference a false statement of fact was communicated by wire or mail because a false statement is not, alone, sufficient to constitute fraud, much less an *offense indictable as mail or wire fraud*. This is particularly true in the context of communications relating to litigation where parties frequently take differing positions as to the facts in a context that provides an opportunity to present opposing positions. *See generally Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766 (4th Cir. 2018) (declining to allow RICO claim to proceed based on allegations of perjury).[5] The court, therefore,

---

[5] *Day* noted Congress's "'understandable reluctance to use federal criminal law as a back-stop for all state court litigation.'" *Id.* at 777 (quoting *United States v. Eisen*, 974 F.2d 246, 254 (2d Cir. 1992)).

adopts the recommendation of the Report and dismisses the RICO claim without prejudice as to all Defendants.

**III.     State-Law Claim**

The Report does not expressly address the State-Law Claim, which Capone describes in his Complaint at one point as "Obstruction of Justice, Hand of one hand of all, Employer W/C Insurance Fraud" and later as a claim for "Workers Compensation Insurance Fraud." Neither does Capone address this claim in his objections, though the Report implicitly recommends dismissal of this claim to the extent asserted against the WC Defendants.

To the extent intended as an independent cause of action, this claim is most akin to a claim for common law fraud. Plaintiff does not, however, allege facts that would support such a cause of action against any Defendant. *See generally M.B. Kahn Constr. Co. v. S.C. Nat'l. Bank of Charleston*, 271 S.E.2d 414, 415 (S.C. 1980) (listing nine elements of fraud). For example, Capone does not allege he was ignorant of the falsity of the alleged misrepresentation or relied on it to his detriment. Rather, the essence of his fraud claim is that what he characterizes as a false statement was made to and presumably relied on by a tribunal to Capone's detriment. While Capone might be injured by such action, it does not fit the elements of fraud. More critically, it is essentially seeking to obtain through collateral litigation what a specialized tribunal vested with authority to make such determinations has already resolved. Capone's route to challenge such determinations (which he has apparently pursued) is an appeal of that decision, not resort to a separate legal action. Nothing in Capone's allegations suggests any extraordinary facts or legal theory that might support recovery through an independent legal action.

**CONCLUSION**

For the reasons set forth above, the court adopts the rationale and recommendation of the Report and dismisses the RICO claim as to all Defendants. While not expressly addressed in the Report, the court also dismisses the State-Law Claim (whether characterized as obstruction of justice, fraud, or other claim) as to all Defendants. The court also dismisses the Title VII and ADA claim except to the extent asserted against the City. Dismissal is without prejudice. The matter is recommitted to the Magistrate Judge for further proceedings as to the surviving (Title VII and ADA) claims against the City.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
February 11, 2020